Argued and submitted March 12, reversed and remanded October 24, 1984

## SOMMER et al,
*Petitioners,*

*v.*

## DOUGLAS COUNTY et al,
*Respondents.*

### (83-ACK-12; CA A27443)

689 P2d 1000

Michael C. Dotten, Portland, argued the cause for petitioners. With him on the briefs were Heller, Ehrman, White & McAuliffe, Portland.

Corinne C. Sherton, Salem, argued the cause for respondent Douglas County. With her on the brief were O'Donnell, Sullivan & Ramis, Salem.

Michael B. Huston, Assistant Attorney General, Salem, argued the cause for respondent Land Conservation and Development Commission. With him on the brief were Dave

Frohnmayer, Attorney General, William F. Gary, Deputy Attorney General, James E. Mountain, Jr., Solicitor General, and Richard D. Wasserman, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

**NEWMAN, J.**

Petitioners appeal from a Land Conservation and Development Commission (LCDC) order acknowledging that the Douglas County Comprehensive Plan and land use regulations are in compliance with the statewide land use planning goals. ORS 197.251. We reverse and remand.

Petitioners assign five errors, three of which relate to LCDC's approval of the county's exception of two areas, the Briggs and High Mesa Estates sites, from the application of Goals 3 and 4. The basis for the exceptions was that those areas are "irrevocably committed" to nonagricultural and nonforest uses. Irrevocable commitment to nonresource use was a basis for an exception to the resource goals in *former* OAR 660-04-025, which was in effect when LCDC issued its acknowledgment order in January 1983. We later held in *Marion County v. Federation for Sound Planning,* 64 Or App 226, 668 P2d 406 (1983), that OAR 660-04-025 was inconsistent with Goal 2, Part II, that "irrevocable commitment" was not a permissible basis for an exception under that goal and that Marion County made exceptions and LCDC acknowledged them under an invalid rule.

Under *Marion County v. Federation for Sound Planning, supra,* the acknowledgment order here on appeal would be reversed and remanded to LCDC. In *1000 Friends of Oregon v. LCDC,* 69 Or App 717, 688 P2d 103 (1984), however, we held that recent changes in the law governing exceptions require us to inquire further. The legislature enacted ORS 197.732 in August 1983, shortly before we decided *Marion County v. Federation for Sound Planning, supra.* Oregon Laws 1983, chapter 827, section 19a. That statute effectively superseded the provisions of Goal 2, Part II, then in effect, that established exception standards. ORS 197.732(1)(b) now permits an exception when

> "[t]he land subject to the exception is irrevocably committed as described by [LCDC] rule to uses not allowed by the applicable goal because existing adjacent uses and other relevant factors make uses allowed by the applicable goal impracticable * * *."

Subsequently, LCDC amended Goal 2, Part II, and promulgated rules pursuant to ORS 197.732. OAR 660-04-000 *et seq;* and *see* OAR 660-04-028, relating to exceptions based on

"irrevocable commitment." As we noted in *1000 Friends of Oregon v. LCDC, supra,* the new statutory criteria and rules are the functional equivalents of the ones that LCDC applied when it made its acknowledgment order here. Because ORS 197.732 amended Goal 2, Part II, and the new rules would be applicable on remand of this case to LCDC, we will determine if the acknowledgment order before us complies with the new statute, goal and rules and, if it does, affirm it even though it was invalid under the law in effect at the time it was made. *1000 Friends of Oregon v. LCDC, supra.*

The acknowledgment order does not comply with the new statute, goal and rules. The Briggs site is a 10-acre parcel that is largely surrounded by land in agricultural use on three sides and by the I-5 freeway on the fourth side. The county's findings describe its "predominant land use" as "commercial *and agricultural.*" (Emphasis supplied.) The findings also recite that "the majority of the Briggs Tract has recently been used as cropland;" that there is a retail store with parking on the site that sells produce, farm equipment and commodities and groceries; that the area has been partitioned and has been the subject of planning for commercial development; that it has been zoned in part Commercial Tourist and in part Community Commercial and included in an Urban Growth Boundary; and that an eight-inch water main has been extended "to the edge of the property" and existing water rights have been surrendered to a water district in anticipation of commercial development. The county noted these actions promoting commercial development of the area, and concluded that

"[t]he water rights have been transferred and cannot be returned. To this extent and because there is existing commercial development, these lands are committed."

The High Mesa Estates site consists of 119 acres which the county found had "been proposed for use as a rural subdivision." The county also noted that the "development has obtained septic approval for all lots and has roughed in the road system." Although the county's findings are unclear, it appears that adjacent land is at least substantially devoted to agricultural use. The county concluded that the site is irrevocably committed to nonresource use "[d]ue to road and water system development, influence of substantial rural

residential uses to the east and *the expressed intentions of the property owners."* (Emphasis supplied.)

▇▇▇▇▇ LCDC's acknowledgment order and its earlier orders in the acknowledgment process add nothing of substance to the county's findings or conclusions. LCDC argues that it was entitled to and did adopt the county's findings, *see* ORS 197.732(4), *but see* ORS 197.732(6)(c), that the county's findings are supported by substantial evidence, ORS 197.732(6)(a), that we may not disturb these findings and that LCDC ruled correctly in accordance with those findings. ORS 197.732(6)(b).[1] As we said, however, in *1000 Friends of Oregon v. LCDC, supra:*

> "The questions on our review of LCDC's approval of the exceptions are, first, whether LCDC's determination that the county's findings and reasons demonstrate that the exceptions areas are * * * committed, and, second, whether its statement of reasons explaining that determination, are legally correct. ORS 197.732(6)(b), (c). * * * The relevance of the facts that the local government found to the criteria for the exceptions and the issue of whether the facts found show that the areas meet the requirements for the exceptions are also questions of law." 69 Or App at 722-23. (Footnote omitted.)

▇▇▇▇▇ Neither LCDC's order nor the county's findings and conclusions demonstrate that the Briggs and High Mesa Estate sites are "irrevocably committed" within the meaning

---

[1] ORS 197.732(4) provides:

"A local government approving or denying a proposed exception shall set forth findings of fact and a statement of reasons which demonstrate that the standards of subsection (1) of this section have or have not been met."

ORS 197.732(6) provides:

"Upon review of a decision approving or denying an exception:

"(a) The board or the commission shall be bound by any finding of fact for which there is substantial evidence in the record of the local government proceedings resulting in approval or denial of the exception;

"(b) The board upon petition, or the commission, shall determine whether the local government's findings and reasons demonstrate that the standards of subsection (1) of this section have or have not been met; and

"(c) The board or commission shall adopt a clear statement of reasons which sets forth the basis for the determination that the standards of subsection (1) of this section have or have not been met."

of ORS 197.732(1)(b), the goal and the rules.[2] Moreover, the county's findings of fact supporting its determination and its stated reasons for it do not meet the statutory and regulatory standards. *See* ORS 197.732(6)(b) and (c). The zoning history of the Briggs site, the transfer of the Briggs water rights, and the other findings and reasons of the county do not demonstrate that it is "impracticable" to use the Briggs site for agricultural uses. Likewise, the proposed subdivision of the High Mesa Estates site, the sanitary and road planning for the High Mesa Estates subdivision,[3] the "expressed intention of the [High Mesa Estates] property owners" to use the site for non-agricultural purposes, and the other findings and reasons of the county do not demonstrate that it is impracticable to use that site for agricultural uses. They show only planning and preparation for the commercial use of agricultural land. We reverse and remand on the exceptions issues.

Petitioners' fourth assignment of error is that

"LCDC erred by acknowledging a plan which it repeatedly had to 'interpret' in ways to permit it to find Douglas County's Comprehensive plan in compliance with LCDC's Goal 3 * * *."

It is not clear whether petitioners' point is that LCDC's interpretations of the plan were erroneous, or that, in determining compliance with goals, LCDC may not "interpret" the plan in the first place. If the latter, petitioners' point is meritless; if the former, and we were not reversing and remanding on other grounds, we would not find this assignment of error specific or clear enough to be a basis for reversal.

---

[2] We use the term "findings and conclusions," but we do not suggest that the county's documents place those labels on particular statements contained in them. If LCDC remands this matter to the county for further proceedings, the requirement of ORS 197.732(4) of findings of fact and a statement of reasons would apply. Similarly, ORS 197.732(6)(c), which requires that LCDC adopt "a clear statement of reasons which sets forth the basis for the determination that the [exceptions] standards * * * have or have not been met," is applicable to LCDC in its proceedings on our remand.

[3] We said in *1000 Friends of Oregon v. LCDC, supra,* that "[a] platted but undeveloped subdivision does not show commitment." 69 Or App at 731. *See also Hillcrest Vineyard v. Bd of Comm Douglas Co.,* 45 Or App 285, 608 P2d 201 (1980), where we previously considered the compatability of a proposed subdivision of the High Mesa Estates site with Goal 3. *See* OAR 660-04-028(2)(c)(A) that states that with respect to parcel size and ownership patterns "[p]ast land divisions made without application of the Goals do not in themselves demonstrate irrevocable commitment of the divided land."

Because we reverse and remand on the exceptions issues, however, we address a matter that LCDC should reconsider on remand.

■        In a July 1982, continuance order, LCDC required the county to amend a provision of its plan and to adopt corresponding amendments to articles 37 and 42 of its land use ordinances to achieve compliance with Goal 3. The county amended the plan but it did not amend the ordinances. LCDC, nevertheless, subsequently acknowledged the ordinance as well as the plan on the ground, among others, that the plan complied with the goals and took precedence over the ordinances. *See Baker v. City of Milwaukie,* 271 Or 500, 533 P2d 772 (1975). In the event of conflict the plan does prevail over the ordinances, but even if the county's plan complies with the goals, LCDC is not excused from its statutory duty to determine whether the county's land use regulations *also* comply with the goals. *See* ORS 197.250; 197.251.

Petitioners' remaining assignment does not require discussion.

Reversed and remanded.